**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-2546-WJM-CBS

TRACI AYON,

    Plaintiff,

v.

KENT DENVER SCHOOL, and
JERRY WALKER,

    Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS WITHOUT PREJUDICE**

---

Plaintiff Traci Ayon ("Plaintiff" or "Mrs. Ayon") brings claims for unlawful termination against Defendant Kent Denver School and Defendant Jerry Walker (jointly, "Defendants"). Before the Court is Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Court Rules of Civil Procedure ("Motion"). (ECF No. 12.) Plaintiff has filed a Response (ECF No. 14), and Defendants have filed a Reply. (ECF No. 19). The Motion is ripe for adjudication.

For the reasons set forth below, the Motion is granted without prejudice. The Court also grants Plaintiff leave to amend its First Amended Complaint. (ECF No. 11.)

## I. STANDARD OF REVIEW

The purpose of a Rule 12(b)(6) motion is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "The court's function

on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts . . . to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility in this context "must refer to the scope of the allegations in a complaint—*i.e.* if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247–48 (10th Cir. 2008).

As the Tenth Circuit recently pointed out in *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210 (10th Cir. 2011), there are two working principles that underlie the *Twombly* holding requiring that a claim be plausible on its face. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 1214 (*quoting Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)) Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (*quoting Iqbal,* 129 S. Ct. at 1950). In other words, a plaintiff must offer sufficient factual allegations to "raise a right to relief above the speculative level." *Id.* (*quoting Twombly*, 550 U.S. at 555).

Accordingly, the plausibility requirement serves not only to "weed out claims that do not have a reasonable prospect of success, but to also provide fair notice to

2

defendants of the actual grounds of the claim against them." *Twombly*, 550 U.S. at 582.

## II. BACKGROUND

**A.     Procedural Background**

On September 26, 2012, Plaintiff filed her Complaint, *inter alia*, for unpaid wages and wrongful discharge.  (ECF No. 3).  Defendants thereafter filed a Motion to Dismiss.  (ECF No. 6.)  That motion was denied by this Court for failure to comply with WJM Revised Practice Standard III.D.1, which requires conferral between the parties preceding the filing of a Rule 12(b)(6) motion.  (ECF No. 6.)  On October 22, 2012, Plaintiff filed an Amended Compliant after the parties had resolved some deficiencies identified in the previous pleadings.[1]  (ECF No. 12 at 1.)

Notwithstanding the parties' efforts to stipulate, three claims still remain subject to the instant Motion.  Those claims are addressed below.

**B.     Factual Background**

The following factual allegations are drawn primarily from Plaintiff's Amended Complaint, all of which are found within the four corners of same:

On or about August 2009, Plaintiff entered into an employment contract to provide daycare services at the Kent Denver School's childcare center.  (ECF No. 11 ¶ 2.)  Plaintiff worked at Kent Denver from 2009-2012.  Her employment was terminated at the end of the 2011-2012 school year.  (*Id.*)

Plaintiff's primary duties at the Kent Denver School were to provide custodial

---

[1] The Court encourages compromise, and has said as much in recent matters.  *See Otter Products, LLC v. Treefrog Developments, Inc.*, 2013 WL 490964, *2-*3 (D. Colo. 2013) ("Compromise between the parties is always encouraged. Compromise allows the parties to focus on those points that count, allowing the merits of the case to be better assessed.")

care and provide for the basic physical needs of babies and toddlers at the childcare center. (*Id.*)  The employee handbook—provided to Plaintiff, and incorporated into her employment contract—states which of Kent Denver's employees were covered by the Fair Labor Standards Act ("FLSA") and which employees were exempt from FLSA. (Id. ¶ 3.)  The employee handbook, *inter alia*, requires that Kent Denver's directors, officers, and employees comply with all applicable laws and regulations and to report violations of the employee handbook.  To protect employees who report violations of the handbook, the handbook contains a "Whistleblower Policy" that bars retaliation for reporting. (*Id.*)

Defendant Jerry Walker is the Associate Head of School at Kent Denver, and he was the person who hired Plaintiff Ayon. *(Id.* ¶ 8*)* He also negotiated the terms of Plaintiff's contract, drafted her contract, and eventually terminated Plaintiff's employment with Kent Denver child care center. (*Id.*)

During her employment at Kent Denver, Plaintiff alleges that she noticed the childcare center was leaving the children of about 1.5 to 3 years of age unattended.  (*Id.* at 4.)  Under Colorado law, it is illegal to leave children between the ages of 1.5 and 3 years old unattended in a childcare center licensed by the state.  (*Id.* ¶¶ 17-19)  Plaintiff claims she reported the lack of supervision to her supervisors repeatedly, but the children continued to be left unattended despite her reports.  (*Id.*)  Plaintiff made these reports to the Acting Director of the childcare center, the childcare center's permanent Director, the Associate Head of the upper school at Kent Denver, and Defendant Walker.  (*Id.* ¶19).

After Plaintiff's many reports, she alleges that she was told by both the Director

4

of the childcare center and Defendant Walker to stop bringing up the issue, and that leaving children unattended in the toddler room was an acceptable practice in the childcare center. (*Id.*) Plaintiff claims that in addition she also faced a hostile work environment as a consequence of her reporting, which included the Director refusing to speak with Plaintiff on some occasions, the director losing her temper with Plaintiff on other occasions, and Defendant Walker scolding Plaintiff to stop reporting despite children still being left unattended. (*Id.*)

When the lack of supervision continued, Plaintiff reported the lack of supervision at childcare center to local and state authorities. (*Id.* ¶ 20-21) As a result of this reporting, the Colorado Department of Health and Human Services (the "CDHHS") told Plaintiff they would inspect Kent Denver's childcare center. (*Id.*) Within a week of the report, the CDHHS did an unannounced inspection of the childcare center at Kent Denver, found children left unattended in the toddler room, and cited Kent Denver for a violation. (*Id.* ¶ 22.)

Days after the inspection, Plaintiff was called into Defendant Walker's office.[2] (*Id.* ¶ 23.) At this meeting, Defendant Walker informed Plaintiff that she was (1) terminated effective at the end of June, (2) would be placed on administrative leave until the school year ended, (3) was leaving on bad terms, (4) would not receive her July bonus, and (5) would not receive any recommendations. (*Id.*)

---

[2] The Court notes that Plaintiff does not allege specific dates throughout the Amended Complaint. For, example, when Plaintiff reported the lack of supervision of children. Should Plaintiff re-file an amended complaint, she would be well advised to include specific dates of when events occurred. While *Iqbal* and *Twombly* cases (and their progeny) have not expressly stated that dates be pled in a complaint as a general rule, the provision of such dates are not inconsistent with those cases and provides greater clarity for Defendants (and the Court).

5

Plaintiff's employment was terminated in June 2012. (*Id.* ¶ 24.) Mrs. Ayon was not paid her July bonus. (*Id.*) Within 60 days of Mrs. Ayon's employment at Kent Denver being terminated, Mrs. Ayon, through her attorney, sent a letter to Kent Denver demanding unpaid wages and stating where the unpaid wages could be delivered. (*Id.*) To date, Defendant Kent Denver has not paid Plaintiff Ayon any money in response to this demand letter. (*Id.*)

### III.  ANALYSIS

Plaintiff specifically brings the following claims for relief: (1) Breach of the Fair Labor Standards Act (FLSA) 28 U.S.C. §§ 201 et Seq (Against Defendants Kent Denver and Walker); (2) Recovery of Colorado Overtime under C.R.S. § 8-6-118; C.C.R. § 7-1103–1 (Against Defendant Kent Denver); (3) Willful Withholding of Wages Pursuant to C.r.s. §§ 8-4-109, -110 (Against Defendant Kent Denver); (4) Wrongful Discharge in Violation of Public Policy (Against Defendants Kent Denver and Walker); (5) Breach of Contract (Against Defendant Kent Denver); (6) Breach of Implied Contract Based on Violation of Employer's Termination Policies or Procedures (Against Defendant Kent Denver and in the Alternative to Plaintiff's Fifth Claim for Relief for Breach of Contract); (7) Promissory Estoppel (Against Defendant Kent Denver and in the Alternative to Plaintiff's Fifth Claim for Relief for Breach of Contract); (8) Intentional Interference with Contractual Obligations (Against Defendant Walker and in the Alternative for Relief Against Defendant Kent Denver); (9) Intentional Infliction of Emotional Distress (Against Defendants Kent Denver and Defendant Walker).

With respect to the Defendants' Motion to Dismiss, and following the parties

'meet and confer', only three claims remain subject to Rule 12(b)(6) scrutiny. They are addressed as follows.

### A.  Intentional Infliction of Emotional Distress (Against Defendants Kent Denver and Walker)

Plaintiff makes a claim against each of the Defendants for Intentional Infliction of Emotional Distress ("IIED"). Defendants contend that the claim does not comport with Rule 12(b)(6) of the Federal Rules of Civil Procedure because it does not sufficiently plead requisite facts to support the claim. The Court agrees.

The elements of an IIED claim include: "(1) the defendant engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe emotional distress." *Green v. QWest Services Corp.*, 155 P.3d 383, 385 (Colo. App. 2006). Liability for outrageous conduct lies only when the plaintiff can prove conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999).

Plaintiff contends that the IIED claim is sufficiently pled because (1) Defendant Walker scolded Plaintiff for "reporting" to CDHHS the fact that the children were being left unattended, (2) that Plaintiff's employment was eventually terminated in "retaliation" for making reports to CDHHS, and (3) that because of the termination, Defendants "circumstantially caused . . . severe emotional distress." (ECF No. 11 ¶¶ 84-85.)

Notwithstanding the facts as pled, the Court finds that they do not rise to the level that is required to satisfy the IIED claim because Colorado case law has erected an

extremely high bar that a plaintiff must satisfy in order to have such a claim put before a jury. Factual allegations must reflect circumstances that are utterly intolerable in a civil society; they must be extreme in kind and degree. See *Reigel v. SavaSeniorCare L.L.C.*, --- P.3d ---, 2011 WL 6091709, at *12 (Colo. App. Dec. 8, 2011) (stating that "the level of outrageousness required to constitute [the] tort of extreme and outrageous conduct is extremely high . . . mere insults, indignities . . . and threats are insufficient.") Specifically, and while Defendants' conduct—if found by the jury in conformity with the allegations asserted by Plaintiff in the IIED claim—may be actionable with respect to Plaintiff's employment claims generally, it does rise to the level which permits a jury to find that it is "utterly intolerable in a civilized community." *Coors Brewing Co.* 978 P.2d at 666.

Additionally, the case law is clear in that an IIED claim must be distinct from a plaintiff's employment claim. *See Visor v. Spring/United Mgmt. Co.*, 965 F. Supp. 31, 33 (D. Colo. 1997). The distinction is maintained to ensure that the IIED claim is reserved for those truly exceptional cases. Colorado law thus requires ascertainable misconduct to support an IIED claim, and is not cognizable if the allegations (forming the basis of the claim) are the same as those forming the basis of other employment actions. *Id.* That is precisely what has been pled here.[3] And unless Plaintiff takes

---

[3] Note, the Court acknowledges Plaintiff's citation of *Madison Services Company, LLC v. Gordon*, 2012 WL 5363323 (D. Colo. Sept. 2, 2010). While the case is analogous in some respects, the case does seem at odds with other cases in the *District of Colorado Visor v. Spring/United Mgmt. Co.*, 965 F. Supp. 31, 33 (D. Colo. 1997) and with Colorado Supreme Court authority making the bar for IIED claims and "extremely high" one. *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999). For those reasons, this Court declines Plaintiff's invitation to adopt the reasoning in *Madison Services* to the case at hand.

more concrete steps to plead facts so to satisfy the high bar of the purported IIED claim—being separate and distinct from the employment claim(s)—the Court will be left with no option but to dismiss the claim in any future amended complaint *with* prejudice. *Gard v. Teletronics Pacing Sys., Inc.*, 859 F. Supp. 1349, 1354 (D.Colo.1994) (stating that an IIED claim is not meant to be an "incantation to augment damages" in an employment discrimination or any other state or federal tort action).[4]

For these reasons, the IIED claim has not been sufficiently pled. It facially fails to meet the high standards set by Colorado law. As to this claim, therefore, Defendants' Motion is granted and the claim is dismissed as to (1) Defendant Kent Denver, and (2) Defendant Walker, without prejudice and with leave to amend.

**B.    Intentional Interference with Contractual Obligations (Against Defendant Walker and in the Alternative to Plaintiff's Fifth, Sixth, and Seventh Claims for Relief Against Defendant Kent Denver)**

Plaintiff's next claim for relief contends that Defendant Walker intentionally interfered with her employment contract with Defendant Kent Denver. (ECF No. 11 ¶¶ 77-82.) Before addressing the merits of the Rule 12(b)(6) Motion on this claim, the Court observes as a threshold issue that pleading a claim for intentional interference is not without difficulty—ever more so in the principal-agent context. Such problems are only heightened in the present employment context where Plaintiff has entered into a contract with Kent Denver—and argues that an agent of Kent Denver (namely Mr.

---

[4] As Defendant rightly points out, the court decides in the first instance whether the facts alleged rise to the level of an outrageous conduct claim. *Rugg v. McCarthy*, 476 P. 2d 753, 756 (Colo. 1970). If allegations fail to meet the standard of atrocious and intolerable behavior, the matter cannot be submitted to a jury. *Widdifield v. Robertshaw Controls Co.*, 671 P. 2d 989, 991 (Colo. App. 1983).

Walker) has intentionally interfered with her contract. On its face, and in the post-*Twombly* environment, Plaintiff's task is even more burdensome where the pleading must be more than "mere labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. *See also Kansas Penn Gaming*, 656 F.3d at 1212 (stating that a Plaintiff must offer "specific factual allegations to support each claim.")[5]

Turning to the key element of the contractual interference claim, a plaintiff must, at minimum, plead sufficient facts to show that "the agent was motivated out of personal animus towards one or both of the contracting parties." *See W.O. Brisben Co. v. Krystkowiak*, 66 P. 3d 133 at 137 (Colo. App. 2002), *aff'd,* 90 P.3d 859 (Colo. 2004). Courts in Colorado have held that attaching personal liability to an agent occurs only in the "rare circumstances" where the agent was "motivated solely by a desire to breach or interfere with the [plaintiff's] contract." *Powell Products, Inc. v. Marks*, 948 F. Supp. 1469, 1478 (Colo. 1996). *See also Ziegler v. Inabata of America, Inc.*, 316 F. Supp. 2d 908, 915 (D. Colo. 2004) (holding "[u]nder Colorado law, an officer or director of a corporation acting within the scope of his or her official capacity will *not* be subject to personal liability for inducing the corporation's breach of its contract"); *DeLong v. Soufiane* , 2010 WL 234781 (E.D.N.Y. 2010).[6]

---

[5] As noted by Defendants, Plaintiff's allegations have not been "directly examined by Colorado courts under Rule 12(b)(6)." (ECF No. 12 at 9.) The fact that Plaintiff does not dispute this only confirms this view.

[6] *See also Burrell v. United States of America*, 2001 WL 34047380 at *3 (E.D.Va. 2001) (granting motion to dismiss claims alleging that the defendant (Sykes) acted outside scope of his dispatcher duties, holding because Sykes was acting in a supervisory capacity and there is no evidence of an independent, external and personal motive, the non-conclusory allegations demonstrate that plaintiff cannot meet his burden to establish that Sykes was acting in other

In light of the above authorities, Defendant contents that Plaintiff's intentional interference claim does not comport with Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court agrees.  The Amended Complaint's deficiencies are three-fold.

First, the claim fails to expressly plead that Defendant Walker was motivated by the desire to do harm to Plaintiff's contract with Kent Denver child care center.  In particular, Plaintiff does not plead specific facts that Defendant Walker acted with independent, external and personal motive to do harm to her employment contract.  *See Burrell v. United States of America*, 2001 WL 34047380 at *3 (E.D.Va. 2001).  While Plaintiff does state that it "appeared" that Mrs. Ayon's reports were taken as a "personal affront to Defendant Walker", the claim does not plead specific factual allegations to support the claim.  (ECF No. 11 at 12.)  That is, nothing is pled as to 'how', 'what' or 'when' Defendant Walker was personally affronted, nor does the pleading indicate the timing (dates) of when Plaintiff made the reports that elicited a purported retaliatory response by Defendant Walker.  As such, more factual input is required—particularly for a claim of personal animus in the post-*Twombly* environment.  *See Kansas Penn Gaming*, 656 F.3d at 1212.

Second, Plaintiff's claim is deficient because it is not clear from the pleadings whether she is alleging that Defendant Walker was acting 'inside' or 'outside' the scope of his position when he terminated Plaintiff from her employment with Kent Denver. Instead, Plaintiff's pleading is convoluted.  It states in the first instance that Walker "was" acting out of "personal animus" in the third line of paragraph 81 of the Amended

---

than his official capacity.)

Complaint—and then, at the sixth line, Plaintiff states that Walker "*may*" have been motivated by "person animus". (ECF No. 11 ¶ 81.) If Defendant Walker was acting with personal animus, outside the scope of his employment, then Plaintiff should plead as much. She shouldn't equivocate. Indeed, the purpose of the plausibility requirement is to solve this very problem by heightening the applicable pleading standards—*i.e.,* to "provide fair notice to defendants of the actual grounds of the claim against them." *Twombly*, 550 U.S. at 582. *See also Pennsylvania Employees Benefit Trust Fund v. Astrazeneca Pharmaceuticals LP,* 2009 WL 2231686 at *3 (M.D. Fla. 2009) (stating that equivocal allegations ("and/or") suggested that the plaintiff was unsure whether it had a claim against the defendant, and was found wanting under the *Iqbal* standard).

In sum, Plaintiff's claim for contractual interference does not meet the bar imposed by *Iqbal* and *Twomby*. Its contentions are equivocal, and it lacks the requisite specificity to provide adequate notice to Defendant Walker. Accordingly, the Court dismisses this contractual interference claim without prejudice, and with leave to amend.

**C.    Wrongful Discharge**

Plaintiff's next claim asserts the common law tort of wrongful discharge. (ECF No. 11 ¶ 46.) While Plaintiff need not prove her claim at this juncture, the following elements for wrongful discharge are pertinent because they provide the framework for the Rule 12(b)(6) analysis.

Colorado law recognizes a public policy exception to an employer's right to fire an at-will employee. *See Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo.1999).

While generally addressed under circumstances where an "employer directs an employee to perform an illegal act as part of his or her work-related duties, the claim may also encompass a situation where an employee is discharged for exercising a specific statutory right or performing a specific statutory duty." *Boeser v. Sharp*, 2006 WL 898126, *5 (D.Colo. March 31, 2006) (*citing Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 109 (Colo.1992); *see also Crawford Rehabilitation Servs., Inc. v. Weissman*, 938 P.2d 540, 553 (Colo. 1997) (To state a public policy claim, "the employee must prove that 'the action directed by the employer would violate a specific statute relating to the public health, safety, or welfare, or would undermine a clearly expressed public policy relating to the employee's rights as a worker ....' ") (emphasis added)(*quoting Rocky Mountain Hosp. & Med. Serv. v. Mariani*, 916 P.2d 519, 524 (1996)).

For this type of claim, the cases set forth three elements: (1) the plaintiff was employed by defendant; (2) the defendant discharged plaintiff; and (3) the defendant discharged the plaintiff because the plaintiff exercised a specific statutory right or performed a specific statutory duty. *Boeser* 2006 WL 898126, at *5.

Notably, here, however, the dispute is not whether Plaintiff has sufficiently pled the above elements with respect to Defendant Kent Denver; rather, the dispute is whether Plaintiff has pled sufficient facts so to make Defendant Walker personally liable for the tort.[7] With respect to Defendant Walker, the Court finds that Plaintiff has not.[8]

---

[7] Indeed the briefing by Defendants directed their primary attack at whether (2) Mr. Walker could in fact be found personally liable, and (2) whether sufficient facts were alleged in the Complaint to even to attach liability. See, for e.g., ECF No. 12 at 3-5.

[8] In fact, Defendants' brief concedes they only challenge "Plaintiff's individual claims against Mr. Walker for Wrongful Discharge." (ECF No. 12 at 2.)

13

First, the Court observes that there is little case law on the issue of whether a wrongful discharge claim can be brought personally against an agent of a defendant employer. Both parties cite law outside the District of Colorado.

Plaintiff contends that courts from several jurisdictions other than Colorado allow employees to be held individually liable for a wrongful discharge committed *within the scope* of their employment. *See, Higgins v. Assmann Elecs., Inc.*, 173 P.3d 453, 458 (Ariz. App. 2007); *Ballinger v. Del. River Port Auth.*, 800 A.2d 97, 110-11 (N.J. 2002); *Harless v. First Nat'l Bank*, 289 S.E.2d 692, 698-99 (W. Va. 1982).

Plaintiff also cites *DeCarlo v. Bonus Stores, Inc.*, 512 F.3d 173, 177 (5th Cir.2007). But on closer inspection of that case, its ultimate holding is inapposite to the point that Plaintiff was trying to prove. In fact, the case undercuts Plaintiff's claim because the Fifth Circuit certified the issue of personal liability to the Mississippi Supreme Court, which held that an agent could *not* be held personally liable for wrongful discharge. *DeCarlo v. Bonus Stores*, Inc., 989 So.2d 351, 359 (Miss. 2008) ("the laws of Mississippi do not allow for individual liability for the tort of wrongful discharge").

Defendant cites cases that support the proposition that the supervisor must be found to have acted *outside the scope* of employment before personal liability can attach. *See Saavedra v. Lowe's Home Centers, Inc.*, 748 F. Supp. 2d 1273, 1290–91 (D. N.M. 2010) (dismissing wrongful discharge claim against manager under Rule 12(b)(6); *Tesh v. United States Postal Service*, 215 F. Supp. 2d 1220, 1229–30 (N.D. Okla. 2002) (only the employer is liable for wrongful discharge); *Rebarchek v. Farmers Co-op. Elevator*, 35 P.3d 892, 902–904 (Kan. 2001) (same).

In addition to the above cases, Defendants also place much reliance on *Leonard v. McMorris*, 63 P.3d 323 (Colo. 2003). While the case is not a wrongful discharge claim *per se*, it is a case that provides guidance for present purposes involving personal liability of corporate officers of a defendant employer, NationsWay, who filed for bankruptcy protection under Chapter 11 (11 U.S.C §§ 1101 et seq. (2000)). Upon the filing of the petition, NationsWay terminated several employees and did not pay wages because the Bankruptcy Code's automatic stay provision prevented the corporation from making the payments. *Leonard*, 63 P.3d at 325. The plaintiff claimed the officers of NationsWay were personally liable for the unpaid wages. Although the Colorado Supreme Court held the corporation's officers were not individually liable, it did, relevantly, enunciate the following principle:

> A corporate officer is **not** the employer responsible for creating the contractual employment relationship and is not personally responsible for a breach of that relationship, **unless** he or she created the relationship **without disclosing** the responsible principal corporation to which he answered as an agent. Instead, an officer acts for the corporation when he or she extends an offer of employment or terminates the employment relationship.

*Id.* at 330 (emphasis added).

On balance, and upon review of the above cases, the Court is unpersuaded by those authorities cited by Plaintiff—particularly in light of what the Colorado Supreme stated in *Leonard* (albeit a Wage Claim case). Indeed—and in the wrongful discharge context—the Court adopts the principle in *Leonard* that an agent is not personally responsible for a breach of an employment relationship, *unless* the agent created the relationship *without first disclosing* the responsible principal corporation to which he answered as an agent. *Id.* Applying that principle here, the Court finds that because

15

Plaintiff has not pled that Defendant Walker created an employment relationship between Mrs. Ayon and Kent Denver, without first disclosing the employment relationship to the Kent Denver, Plaintiff's claim must be dismissed. If the factual allegations exist to support this claim, they should be pled in a further amended complaint. If not, the parties (and the Court should concentrate on those claims are in genuine dispute.)

Second, Plaintiff's pleading is deficient because a claim for wrongful termination is predicated upon the existence of an employment relationship. *Bonidy*, 186 P. 3d at 83. Specifically, an employment relationship must exist before an employee can be wrongfully terminated so to establish a *prima facie* case of wrongful discharge. *Id.* Here, and between the years 2009-2012, Plaintiff's contract was with Kent School. Plaintiff pleads that she was wrongfully terminated from same. (ECF No. 11 ¶ 4) ("Mrs. Ayon entered into an employment contract to provide daycare services at Kent Denver's childcare center in fall of 2009.") To then argue that Defendant Walker personally terminated her employment implies that Plaintiff also had a personal employment relationship with Mr. Walker between the years 2009-2012. This is not what is pled in the Amended Complaint. On Plaintiff's own theory of the case, she can not have it both ways. Either Plaintiff had an employment contract with Defendant Kent Denver, which was wrongfully terminated by Kent Denver; or Plaintiff had a contract with Mr. Walker, which was wrongfully terminated by Mr. Walker. At present the Amended Complaint does not plead a separate claim for relief in the alternative as against Defendant Walker; rather both Defendants are bundled together in the same claim making it deficient under Rule 12(b)(6) for the reasons stated above. As such, should Plaintiff

wish to proceed against Defendant Walker for personal liability, Plaintiff should plead a separate alternative claim.[9]

Accordingly, the abovementioned deficiencies must be amended before the claim against Defendant Walker will pass Rule 12(b)(6) scrutiny.  And while Plaintiff's claim is dismissed without prejudice on this occasion, there will be no second bite of the apple if the deficiencies are not corrected on the next filing should Plaintiff see to do so.

### IV. CONCLUSION

For the reasons set forth above, It is hereby ORDERED that:

1. Defendants' Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 12) is GRANTED;

2. As to the Plaintiff's Claims which are dismissed without prejudice, leave is granted to Plaintiff to file an Amended Complaint on or before May 17, 2013.

Dated this 26th day of April, 2013.

BY THE COURT:

William J. Martínez
United States District Judge

---

[9] As presently pled, the wrongful discharge claim against Defendant Walker alleges that he was acting inside *the scope of his employment. But this poses problems for the Amended Complaint as a whole—i.e.* that Defendant Walker interfered with Plaintiff's employment contract and was acting "outside the scope" of his employment.  (ECF No. 11 ¶ 81.)  Because Plaintiff has made no attempt to reconcile these inconsistencies—not even with cross-referencing the pleadings in the alternative—the claim must be dismissed as not placing Defendant Walker on notice of the grounds leveled against him.