**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-2546-WJM-CBS

TRACI AYON,

    Plaintiff,

v.

KENT DENVER SCHOOL, and
JERRY WALKER,

    Defendants.

---

**ORDER DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT**

---

    In this civil action, Plaintiff Traci Ayon ("Plaintiff") brings claims against her former employer Defendant Kent Denver School and Associate Head of School Jerry Walker (together "Defendants"). (ECF No. 1.) Before the Court is Plaintiff's Motion for Partial Summary Judgment ("Motion") with respect to her entitlement to unpaid overtime, liquidated damages, and attorney's fees under the Fair Labor Standards Act ("FLSA"). (ECF No. 27.) For the reasons set forth below, the Motion is denied.

### I. LEGAL STANDARD

    Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one

party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Service*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is sufficiently contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. FACTUAL BACKGROUND

The relevant facts, viewed in the light most favorable to the non-moving party, are as follows.

Defendant Kent Denver School ("Kent Denver") is a private school serving students in grades six through twelve. (ECF No. 27-9 at 6.) Kent Denver operates a Child Care Center serving children of Kent Denver's faculty who are six weeks through three years of age. (*Id.* at 3.) Plaintiff was employed by Kent Denver to work at the Child Care Center from September 2009 until June 2012. (Am. Compl. (ECF No. 11) ¶¶ 5, 23-24.) Defendant Jerry Walker, the Associate Head of School, drafted and offered Plaintiff's employment contracts, negotiated her salary with her, and heads the business office where her personnel file was maintained. (ECF No. 13 ¶ 9.)

Although the parties dispute the title of Plaintiff's position at Kent Denver, the advertisement for Plaintiff's position was entitled "Toddler Group Leader Teacher

Needed!", her initial employment offer letter referred to her position as a "Toddler Teacher", and her job description was entitled "Early Childhood Teacher / Infant Nursery Supervisor".  (ECF Nos. 27-2, 31-5, 31-9.)  At the time Plaintiff was hired in 2009, she was required to meet the "2010 Group Leader qualifications" under Colorado law.  (ECF Nos. 27-2, 31-3); *see also* 12 Colo. Code Regs. 2509-8 § 7.702.54(A) (2009).  In May 2010, the relevant regulation was amended, and the position title was changed from "Group Leader" to "Early Childhood Teacher".  12 Colo. Code Regs. 2509-8 § 7.702.54(A) (2010).  After leaving Kent Denver, Plaintiff referred to her position at Kent Denver on her resume as an "Early Childhood Teacher / Infant Nursery Supervisor", and described her work in that position as including "[i]nfant and [t]oddler responsive care giving," "developing and implementing lesson plans that included developmentally appropriate practices," and "[s]upervision of parent volunteers and middle school visitors assisting in my classroom daily."[1]  (ECF No. 31-7.)

While employed in the Child Care Center, Plaintiff supervised children between 5 and 24 months of age in the "older infant" and "young toddler" rooms.  (Affidavit of Traci Ayon (ECF No. 27-1) ¶¶ 19-24.)  Plaintiff's job description included planning "both long and short-range activities in accordance with developmentally appropriate practice", keeping accident reports and "records of observations and developmental milestones",

---

[1] Defendants attached an exhibit entitled "Ayon Current Resume" to their Response which included this information, and quoted from that document in their briefing.  (ECF Nos. 31-7; 31 at 8.)  In Plaintiff's Reply, she noted that "Plaintiff has no personal knowledge" of such information, but did not contest the authenticity of the resume and admitted for the purposes of this Motion that Defendants' assertions were true.  (ECF No. 38 at 4.)  The Court finds it perplexing that Plaintiff would claim to have no personal knowledge of the contents of her own current resume.  Nevertheless, as Plaintiff has admitted Defendants' assertions with respect to that document, the Court treats the matter as undisputed for the purposes of this Motion.

and meeting "the emotional, social, physical and cognitive needs of each child".  (ECF No. 31-5.)  Deborah Kelly, who was the Director of the Child Care Center and Plaintiff's supervisor during her employment with Kent Denver, attested that Plaintiff's "primary job duties as a teacher in the Kent Child Care Center were to develop and implement age appropriate curriculum," that she was required "to prepare curriculum, developmental charts and lesson plans for [her] students, and she spent approximately 75 percent of her work time teaching pupils a variety of skills, language and mathematical concepts, and updating and developing new lesson plans."  (Affidavit of Deborah Kelly (ECF No. 31-12) ¶ 6.)  In contrast, Plaintiff attested that her "main duty . . . was to care for and protect the children enrolled at the Child Care Center," and that her job was "primarily to supervise the children, feed the children, change the children's diapers, facilitate the children's naps, facilitate the children's play, and otherwise care for the infants and toddlers." (Ayon Aff. ¶¶ 15-16.)

During her employment at Kent Denver, Plaintiff worked more than forty hours in a week on at least some occasions.  (ECF Nos. 27 at 7; 31 at 4-5.)  Kent Denver paid Plaintiff a salary of $2,300 per month when hired, which increased in 2010 and again in 2011, but did not pay her overtime wages.  (ECF Nos. 31-9, 31-10, 31-11.)  Plaintiff was terminated from her employment at Kent Denver in June 2012.  (Am. Compl. ¶¶ 23-24.)

In August 2012, Plaintiff filed this action in the Denver County District Court bringing both state and federal claims against Defendants.  (ECF No. 1.)  Defendants removed the action to this Court on September 25, 2012 based on Plaintiff's federal claims.  (*Id.*)  Plaintiff subsequently amended her Complaint on October 22, 2012. (ECF No. 11.)  On March 4, 2013, Plaintiff filed the instant Motion for Summary

Judgment on her claim for violations of the FLSA.  (ECF No. 27.)  Defendants filed a Response (ECF No. 31), and Plaintiff a Reply (ECF No. 38).

### III.  ANALYSIS

In Plaintiff's Motion, she argues that summary judgment on her FLSA claim is appropriate because there is no dispute of fact that she worked more than forty hours per week on multiple occasions.  (ECF No. 27 at 9.)  As a result, Plaintiff contends that she is entitled to liquidated damages, and that Defendant Jerry Walker is jointly and severally liable for the FLSA violation because he was her joint employer with Kent Denver.  (*Id.* at 9-11.)  Defendants do not dispute that Plaintiff worked more than forty hours in a week on some occasions, but contend that no violation occurred because Plaintiff was exempt from the FLSA's overtime requirements.  (ECF No. 31 at 4, 12-16.)  Defendants also argue that factual disputes exist with respect to Plaintiff's liquidated damages and joint employer arguments, and summary judgment is therefore inappropriate.  (*Id.* at 16-19.)

**A.     FLSA Violation**

Under the FLSA, the general rule is that any employee who works more than forty hours in a workweek must receive overtime compensation.  *See* 29 U.S.C. § 207(a)(1).  Employers need not pay overtime, however, if the employee is "employed in a *bona fide* executive, administrative, or professional capacity" as defined by the regulations promulgated by the Secretary of Labor.  *See* 29 U.S.C. § 213(a)(1).  Employees who fall within the "executive, administrative or professional" regulations are commonly referred to as "exempt" employees.

The employee bears the burden of proving that the employer is violating the FLSA. *Archuleta v. Wal-Mart Stores, Inc.*, 543 F.3d 1226, 1233 (10th Cir. 2008). However, if the employer asserts that the employee is exempt because she falls within the executive, administrative, or professional exceptions, the employer bears the burden of establishing that such category applies. *Id*. The exceptions to the FLSA's overtime requirement are construed strictly against the employer. *Id*.

In this case, Defendants first allege that Plaintiff was exempt from the overtime requirements because she was a teacher, which qualifies as an exempt professional employee under federal regulations. (ECF No. 31 at 12-14.) Under the Department of Labor regulations, teachers are considered "employee[s] employed in a *bona fide* professional capacity" and are thus exempt from the FLSA overtime requirements if the employee (1) has "a primary duty of teaching, tutoring, instructing or lecturing in the activity of imparting knowledge", and (2) "is employed and engaged in this activity as a teacher in an educational establishment by which the employee is employed." 29 C.F.R. § 541.303(a). As the employer, Defendants bear the burden of showing that each of these prongs has been satisfied. Because, as set forth below, the Court finds sufficient evidence as to both prongs to establish a *prima facie* case that the teaching exemption applies, summary judgment is not appropriate.

    1.    <u>Primary Duty is Teaching</u>

The parties dispute whether Plaintiff's primary duty was teaching the children in the Child Care Center. Defendants argue that Plaintiff was a teacher in both title and duties, and that the regulations explicitly include nursery school teachers. (ECF No. 31 at 12-14.) Plaintiff contends that she was a caregiver, not a teacher, and her primary

duty was the custodial care of the infants and toddlers under her supervision. (ECF No. 38 at 14-17.)

To qualify for the teacher exemption, an employee must have as his or her primary duty "teaching, tutoring, instructing or lecturing in the activity of imparting knowledge". 29 C.F.R. § 541.303(a). Under the FLSA regulations, an employee's "primary duty" is teaching if it is the "principal, main, major or most important duty that the employee performs." *See id.* § 541.700(a). To determine whether an employee's primary duty is teaching, the Court may look at the following non-exclusive factors: (1) the amount of time spent performing teaching duties, (2) the relative importance of teaching duties as compared to other duties, (3) the employee's relative freedom from direct supervision, and (4) the relationship between the employee's salary and the wages paid to other employees performing nonexempt work. *Id.*

Viewing the evidence in the light most favorable to Defendants, the Court finds that Defendants have made a *prima facie* showing that Plaintiff's primary duty was teaching. Plaintiff "develop[ed] and implement[ed] age appropriate curriculum," "prepare[d] curriculum, developmental charts and lesson plans for [her] students," and taught "a variety of skills, language and mathematical concepts." (Kelly Aff. ¶ 6.) Plaintiff also planned "both long and short-range activities in accordance with developmentally appropriate practice", and worked to meet "the emotional, social, physical and cognitive needs of each child". (ECF No. 31-5.) Plaintiff herself noted in her resume that her work at Kent Denver included not only caregiving, but also "developing and implementing lesson plans that included developmentally appropriate practices". (ECF No. 31-7.) All of these are activities that would fall within the scope of

7

"teaching, tutoring, instructing or lecturing in the activity of imparting knowledge" according to the regulations cited above. Although Plaintiff has presented contrary testimony, there is evidence in the record that Kent Denver considered teaching to be Plaintiff's most important duty, that she exercised independent judgment and discretion in implementing that duty, and that she spent the majority of her time at work engaged in teaching. (*See* Kelly Aff. ¶¶ 7-8; Affidavit of Jerry Walker (ECF No. 31-1) ¶ 11.)

Plaintiff argues in her Response that the very idea of a Child Care Center employee attempting to teach babies and toddlers is absurd. Plaintiff states, for instance, that Defendants' contention that Plaintiff's primary duty was teaching "does not pass the laugh test", and expresses disbelief at the idea that Defendants might "seriously be contending" that Plaintiff's supervision of the children's educational play might qualify as teaching. (ECF No. 38 at 15, n.4.) Plaintiff further argues that her numerous caretaking responsibilities left "little time for teaching mathematics to the babies." (*Id.* at 16.)

Plaintiff's attempt to demean and mock the educational value of nursery school for infants and toddlers has no persuasive value in the primary duty analysis. The federal regulations specifically acknowledge the possibility that kindergarten and nursery school teachers may qualify as exempt, and Colorado law includes in its definitions of "nursery" infants and toddlers of the same ages as those in the Child Care Center. *See* 29 C.F.R. § 541.303(b); 12 Code Colo. Regs. 2509-8 § 7.702.2(B). The young age of the children at issue here, and the necessarily play-oriented teaching techniques applicable to those children, does not diminish "the activity of imparting knowledge" to those children that is a nursery school teacher's primary duty. *See* 29

C.F.R. § 541.303(a). Furthermore, the regulations explicitly extend beyond traditional upper-level academic teaching to include nursery schools, special education, vocational schools, driving instructors, and music lessons, indicating a more expansive definition of teacher, and eliminating any requirement to teach mathematics to infants. *See id.*

Accordingly, viewing the evidence in the light most favorable to Defendants, the Court finds that Defendants have made a *prima facie* showing that Plaintiff's primary duty was teaching.

2.  Educational Establishment

To qualify for the teacher exemption, an employee must also be employed by an educational establishment. 29 C.F.R. § 541.303(a). The federal regulations define "educational establishment" as including "an elementary or secondary school system, an institution of higher education or other educational institution." *Id.* § 541.204(b). The definitions of "elementary or secondary education" are in turn defined by state law. *Id.* "Under the laws of most States, such education includes the curriculums in grades 1 through 12; under many it includes also the introductory programs in kindergarten. . . [and] in some [s]tates may also include nursery school programs." *Id.* Accordingly, the regulations state that "[e]xempt teachers include, but are not limited to: Regular academic teachers; teachers of kindergarten or nursery school pupils," and other types of specialized and vocational teachers. *Id.* § 541.303(b). "[F]or purposes of the exemption, no distinction is drawn between public and private schools." *Id.* § 541.204(b).

Plaintiff argues that Defendants cannot meet this prong of the test, as they have failed to present any evidence that Kent Denver's Child Care Center is an educational establishment as defined by the regulations. (ECF No. 38 at 12-13.) Plaintiff cites a Department of Labor opinion letter concluding that "[u]nless the daycare center provides grade school curriculums, introductory programs in kindergarten, or nursery school programs in elementary education of the sort described in § 541.204(b), as determined under state law," it does not meet the definition of "educational establishment". (*Id.*; ECF Nos. 38-2, 38-3.)

As an initial matter, the Court notes that administrative agencies' opinion letters, while persuasive, do not have the force of law. *See United States v. Mead Corp.*, 533 U.S. 218, 220 (2001). Further, the opinion letter Plaintiff cites here appears to misread the regulations. The letter refers to the need for a daycare center to provide, *e.g.*, "nursery school programs in elementary education" in order to qualify as an educational establishment, which quotes § 541.204(b) but appears to take this phrase out of context. Read in context, the regulation does not require a nursery school-age daycare center to provide a program in elementary education, but rather refers to the fact that in some states, nursery school programs are included within the definition of elementary education. *See* 29 C.F.R. § 541.204(b). The opinion letter's awkward and confusing phrasing aside, it merely concludes that unless a daycare center meets the requirements of § 541.204(b), it is not an educational establishment. Accordingly, it contributes nothing to aid the Court in interpreting the regulations.

Plaintiff next argues that Defendants cannot claim that merely because Kent Denver is undisputedly a secondary school itself, the Child Care Center is also an

10

educational establishment solely by virtue of its being located within a school.  (ECF No. 38 at 14.)  In support of this argument, Plaintiff cites a case from the District Court for the District of Columbia, in which a school for inmates in a correctional facility was found to be an educational establishment, but that the correctional facility in its entirety was not.  (*Id.* (citing *Wilks v. District of Columbia*, 721 F. Supp. 1383, 1386 (D.D.C. 1989)).)  The Court agrees with the *Wilks* court that the existence of a school within a larger, non-educational entity does not make that larger entity a school, but Plaintiff's extension of that concept here does not necessarily follow.  That is, *Wilks* does not compel a finding that where the larger entity is indisputably a school, a smaller facility within that school is necessarily independent from the larger educational establishment.  Thus, this citation also fails to assist the Court in its determination of whether the Kent Denver Child Care Center is an educational establishment under the regulations.

The Court notes that, as Plaintiff pointed out, Defendants have utterly failed to make any argument with respect to the educational establishment prong of the teacher exemption analysis.  Instead, Defendants appear to assume that the Court will take judicial notice of Kent Denver's status as a school, and summarily conclude that the Kent Denver Child Care Center was an educational establishment.  Such an assumption is strategically foolhardy.

Nevertheless, the evidence in the record establishes that Kent Denver, undisputedly a school serving grades 6 through 12, is a secondary school and an educational establishment under the regulations.  *See* 29 C.F.R. § 541.204(b).  Furthermore, while Plaintiff worked specifically at the Kent Denver School Child Care Center, Kent Denver itself—not a separate daycare center entity—was Plaintiff's

11

employer. Finally, the record shows that Kent Denver viewed the Child Care Center employees as teachers. (ECF Nos. 31-9, 31-10, 31-11.) A reasonable juror could therefore find that the Child Care Center was part of Kent Denver, and because the regulations permit a nursery school to lie within the scope of the "elementary education" definition, there is sufficient evidence to find that the Child Care Center was part of the educational establishment of Kent Denver. 29 C.F.R. § 541.303(a). Accordingly, the Court finds sufficient evidence to make a *prima facie* case that the Kent Denver Child Care Center meets the "educational establishment" requirements of § 541.303.

In sum, the Court finds that Defendants have made a *prima facie* showing that Plaintiff is exempt from the FLSA overtime requirements as a teacher. Accordingly, summary judgment in Plaintiff's favor on her FLSA claim is inappropriate. Because of this finding, the Court need not consider Defendants' alternative argument that Plaintiff is exempt as a professional employee.

**B.     Remaining Arguments**

Plaintiff also asks the Court to determine, as a matter of law, that she is entitled to liquidated damages. (ECF No. 27 at 9.) Under the FLSA, an employer that fails to pay overtime compensation is typically liable for liquidated damages in an amount equal to the amount of unpaid overtime. *See* 29 U.S.C. § 216(b); *Dep't of Labor v. City of Sapulpa*, 30 F.3d 1285, 1289 (10th Cir. 1994). However, if the employer can prove that (1) the violation occurred in good faith and (2) it had "reasonable grounds for believing that its act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed

the amount specified in section 216 of this title." 29 U.S.C. § 260; *Doty v. Elias*, 733 F.2d 720, 725-26 (10th Cir. 1984).

Whether an employee is entitled to liquidated damages is a discretionary determination to be made after a violation of the FLSA has been established. *See Brinkman v. Dep't of Corr.*, 21 F.3d 370, 372-73 (10th Cir. 1994). Because the threshold question of a violation has yet to be determined, the Court cannot resolve the liquidated damages issue at this stage of the litigation.

Similarly, as no FLSA violation has yet been established, summary judgment is inappropriate on the issue of whether Defendant Jerry Walker is jointly and severally liable with Kent Denver for any such violation. (*See* ECF No. 27 at 9-12.) Furthermore, the question of whether an individual is a joint "employer" under the FLSA depends upon a fact-specific inquiry into that individual's powers and job duties, and the parties have presented conflicting evidence in that regard. (*Compare id.* at 10-11 *with* ECF No. 31 at 18-19.) A determination of Defendant Walker's liability is thus both premature and inappropriate given the existence of disputes of material fact.

Accordingly, Plaintiff's Motion is denied to the extent it seeks pre-trial resolution of liquidated damages or Defendant Walker's liability as a joint employer.

## IV. CONCLUSION

For the reasons set forth above, the Court hereby ORDERS that Plaintiff's Motion for Partial Summary Judgment (ECF No. 27) is DENIED.

Dated this 5th day of November, 2013.

BY THE COURT:

William J. Martinez
United States District Judge